1
2
3
4
5
6
7
8           **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   RONALD BERNARD BUTLER,                    No. 2:13-cv-0662-JAM-CMK-P

12              Petitioner,

13         vs.                                 <u>FINDINGS AND RECOMMENDATIONS</u>

14   GARY SWARTHOUT,

15              Respondent.

16   _____/

17              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254, challenging a decision by the California Board of

19   Parole Hearings (Board) that he is unsuitable for parole.  Pending before the court is

20   Respondents' motion to dismiss (Doc. 10) on the grounds that the petition is untimely, and in the

21   alternative, fails to state cognizable grounds for federal habeas relief and raises a challenge that is

22   the subject of a pending class action suit.  Petitioner filed an opposition to the motion (Doc. 13).

23   **I.    BACKGROUND**

24              Petitioner was convicted in the Sacramento County Superior Court of second

25   degree murder in 1987, and was sentenced to 23 years to life. (Pet., Doc. 1, at 1).  A subsequent

26   parole consideration hearing for petitioner was held on May 31, 2011.  (Pet., Doc. 1, Ex. A).  At

that hearing, the Board determined petitioner was not suitable for parole, and denied petitioner

parole for five years.  (Id.)  The Board's decision was rendered at the time of the hearing on May

31, 2011, but states it was not final until September 28, 2011.  (Id.)  Petitioner filed a habeas

petition with the Sacramento County Superior Court on August 12, 2012.  The Sacramento

County Superior Court denied the petition on October 2, 2012. Petitioner continued to proceed

on his petition though the State courts.  His final state petition filed with the California Supreme

Court was denied on March 27, 2013.  Petitioner signed the instant petition on March 30, 2013,

which was received by this court and filed on April 4, 2013.

## II.  MOTION TO DISMISS

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to

dismiss a petition if it "plainly appears from the petition and any attached exhibits that the

petitioner is not entitled to relief in the district court . . . ."  Rule 4 of the Rules Governing

Section 2254 Cases.  The Ninth Circuit has allowed respondents to file a motion to dismiss in

lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being

in violation of the state's procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th

Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state

remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural

grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F. Supp.

1189, 1194 & n. 12 (E.D. Cal. 1982) (same).  Thus, a respondent can file a motion to dismiss

after the court orders a response, and the Court should use Rule 4 standards to review the motion.

See Hillery, 533 F. Supp. at 1194 & n.12.  The petitioner bears the burden of showing that he has

exhausted state remedies.  See Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981).

A.    Statute of Limitations

Respondent first brings this motion to dismiss petitioner's federal habeas corpus

petition as filed beyond the one-year statute of limitations, pursuant 28 U.S.C. § 2244(d).

/ / /

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA").  AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment.  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc).  In this case, the petition pending in this court was filed on April 4, 2013, and therefore, it is subject to the provisions of AEDPA.  AEDPA imposes a one-year statute of limitation on petitioners seeking to file a federal petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, § 2254(d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right was asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The statute of limitations for habeas petitions challenging parole suitability hearings is based on § 2244(d)(1)(D), that is, the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.  <u>See</u> <u>Shelby v. Bartlett</u>, 391 F.3d 1061, 1062 (9th Cir. 2004), <u>Redd v. McGrath</u>, 343 F.3d 1077, 1079 (9th Cir.

2003).  In habeas proceedings challenging an administrative decision, courts within the Ninth

Circuit, relying on the opinions in <u>Shelby</u> and <u>Redd</u>, have determined that discovery of the

factual predicate cannot occur until the administrative decision is final.  <u>See Shelby</u>, 391 F.3d at

1065-66; <u>Redd</u>, 343 F.3d at 1084-85; <u>Tafoya v. Subia</u>, 2:07cv2389, 2010 WL 668920 *2-3 (E.D.

Cal. Feb. 23, 2010).

        Here, petitioner is challenging the May 31, 2011, denial of parole, which was final

on September 28, 2011.  As stated above, the statute of limitations period does not start to run

until a parole denial is "final."  Therefore, the statue of limitations began on September 29, 2011,

the day after the Board's decision became final.  Petitioner filed his state habeas petition on

August 12, 2012, and the limitations period was tolled until the California Supreme Court's

denial on March 27, 2013.  Thus, 318 days of the 365 day statute of limitations ran between

Board's decision and the time petitioner filed his first state habeas petition.  Following the

California Supreme Court's denial of his petition on March 27, 2013, the statute began running

again.  Petitioner then filed his federal petition on April 4, 2013, eight days later.  Thus,

petitioner used a total of 326 days of the 365 day statute of limitations, making his federal

petition timely filed.  The motion to dismiss the petition as untimely should therefore be denied.

        B.    Due Process

        Next, respondent contends petitioner's claim challenging the basis of the Board's

decision is not cognizable based on  <u>Swarthout v. Cook</u>, 562 U.S. 216, 131 S. Ct. 859 (2011).

        Reversing the Ninth Circuit's decision in <u>Hayward v. Marshall</u>, 603 F.3d 546 (9th

Cir. 2010) (en banc), the United States Supreme Court has observed:

> Whatever liberty interest exists [in parole] is, of course, a *state* interest.  There is no right under the Federal Constitution to be conditionally released [on parole] before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. <u>Id.</u> at 7. When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures. . . .

<u>Swarthout v. Cooke</u>, 562 U.S. 216, 131 S. Ct. 859, 862 (9th Cir. 2011) (per curiam) (citing

4

1    Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 7 (1979)) (emphasis

2    in original).

3              The Court held:

4                    In the context of parole, we have held that the procedures required
       are minimal.  In Greenholtz, we found that a prisoner subject to a parole
5      statute similar to California's received adequate process when he was
       allowed an opportunity to be heard and was provided a statement of the
6      reasons why parole was denied.  442 U.S. at 16.  "The Constitution," we
       held, "does not require more."  Ibid.  Cooke and Clay received at least this
7      amount of process: They were allowed to speak at their parole hearings
       and to contest the evidence against them, were afforded access to their
8      records in advance, and were notified as to the reasons why parole was
       denied.  (citations omitted).
9                    That should have been the beginning and the end of the federal
       habeas courts' inquiry into whether Cook and Clay received due
10     process. . . .

11   Id.

12             The Court added that "[n]o opinion of ours supports converting California's

13   'some evidence' rule into a substantive federal requirement" and "it is no federal concern . . .

14   whether California's 'some evidence' rule of judicial review (a procedure beyond what the

15   Constitution demands) was correctly applied" because "a 'mere error of state law' is not a denial

16   of due process."  Id. at 862-63 (citing Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982)).  Thus, in

17   cases challenging the denial of parole, the only issue subject to federal habeas review is whether

18   the inmate received the procedural due process protections of notice and an opportunity to be

19   heard.  There is no other clearly established federal constitutional right in the context of parole.

20             Here, petitioner claims the Board's decision lacked evidentiary support, failed to

21   adhere to state law, and violated his liberty interest.  To the extent petitioner claims that the

22   decision to deny parole was arbitrary and not based on "some evidence" or otherwise failed to

23   satisfy substantive due process, the claim is foreclosed as a matter of law because there is no

24   clearly established federal constitutional substantive due process right in parole.  Petitioner does

25   not claim that his procedural due process rights were violated, that he was not provided the

26   minimal procedural due process protections of notice and an opportunity to be heard.  Therefore,

1    petitioner's challenge to the Board's decision base on denial of due process should be dismissed.

2         C.    Ex Post Facto

3         Respondent's final ground for dismissing petitioner's petition is that petitioner is a

4    member in the Gilman class action suit addressing this same issue.  Petitioner contends that he

5    has opted out of the Gilman class action, and that his case does not fall within the parameters of

6    that action.  The case at issue, Gilman v. Brown, is an Eastern District of California case, number

7    2:05-cv-0830-LKK-CKD.[1]

8         Petitioner's final claim in his habeas petition is that he is entitled to relief from the

9    ex post facto violation in the form of an order that requires the BPH to hold it's next parole

10   consideration hearing for him within one year of it's 2011 denial.  He argues that Proposition 9,

11   known as Marsy's Law, when applied retroactively, creates a significant risk of increasing the

12   measure of punishment attached to his original sentence.

13        Marsy's Law was enacted by the California voters in 2008. Marsy's Law extended

14   the maximum deferral period between parole eligibility hearings from five to fifteen years. See

15   Gilman v. Schwarzenegger, 638 F.3d 1101, 1104 (9th Cir.2011); Cal. Penal Code § 3041.5(b)(3)

16   (2010).  The law amended PC § 3041.5 by "increas[ing] the period of time between parole

17   hearings but allow[ing] for the advancement of a hearing if a change in circumstances or new

18   information subsequently establishes that there is a reasonable probability the prisoner is suitable

19   for parole." In re Vicks, 56 Cal.4th 274, 278, 153 Cal.Rptr.3d 471 (2013).  Prior to the law, the

20   periods between parole hearings varied but were generally shorter. Id. at 283–84. Vicks held that

21   the law did not violate the Ex Post Facto clauses of the United States or California Constitution.

22   Id. at 278.

23

24        [1]    The court may take judicial notice pursuant to Federal Rule of Evidence 201 of
     matters of public record.  See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008).
25   Thus, this court may take judicial notice of state court records, see Kasey v. Molybdenum Corp.
     of America, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, see Chandler v. U.S.,
26   378 F.2d 906, 909 (9th Cir. 1967).

1      In Gilman, California state prisoners serving a life term with the possibility of

2 parole brought a civil rights class action and alleged that Marsy's Law violated the Ex Post Facto

3 clause. The district court granted a preliminary injunction, finding that the plaintiffs were likely

4 to succeed on the merits, but the Ninth Circuit reversed. See Gilman, 638 F.3d at 1103. The

5 Ninth Circuit found that Proposition 9 "appear[s] to create a significant risk of prolonging

6 plaintiffs incarceration." Id. at 1108. At the same time, the Court found that the availability of

7 advanced hearings "would remove any possibility of harm to prisoners because they would not be

8 required to wait a minimum of three years for a hearing." Id. at 1109. Reversing the injunction,

9 the Court found that the plaintiffs were not "likely to succeed on the merits of their ex post facto

10 claim." Id. at 1111.

11      "One of the claims presented by the plaintiffs in the class action Gilman case is

12 that the amendments to Cal. Penal Code § 3041.5(b)(2) regarding parole deferrals, imposed

13 under Marsy's Law violates the Ex Post Facto Clause because when applied retroactively, '[they]

14 create a significant risk of increasing the measure of punishment attached to the original crime.'"

15 Bagdasaryan v. Swarthout, 2012 WL 6203113, *8 (E.D.Cal. Dec.8, 2012). "With respect to this

16 Ex Post Facto claim, the class in Gilman is comprised of all California state prisoners who have

17 been sentenced to a life term with the possibility of parole for an offense that occurred before

18 November 4, 2008," are eligible for parole, and have been denied parole. Bagdasaryan, 2012 WL

19 6203113 at *8, see also Johnson v. Hartley, 2013 WL 440990 *4 (E.D.Cal. Feb.5, 2013)

20 (describing Gilman class).

21      The trial court certified the class in March 2009 under Federal Rule of Civil

22 Procedure 23(b)(2), then subsequently addressed the definition of the certified class. "The first

23 certified class of plaintiffs were sentenced to life terms for offenses that occurred before

24 November 4, 2008. On that date, Proposition 9 [Marsy's Law] increased the interval between

25 parole hearings available to these prisoners from a default period of one year (with a maximum

26 of three or five years), to a default period of 15 years (with a minimum of three years)." Gilman,

7

1  2013 WL 1904424 at *1. The Court explained that "[t]he class [ ][was] certified pursuant to

2  Fed.R.Civ.P. 23(b)(2), which permits class member to 'opt out' at the discretion of the court." Id.

3  at *1 n. 1 (citing Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 n. 6 (9th Cir.1998)).

4          Petitioner satisfies the definition for class membership in Gilman's certified class

5  as he is (1) a California state prisoner; (2) sentenced to a term of life in prison with the possibility

6  of parole; and (3) sentenced before the November 8, 2008, effective date of Proposition 9.

7  Petitioner alleges he has opted out of the Gilman class, and that he seeks relief different and

8  beyond that sought by the class.  However, the relief he seeks is not different and beyond that

9  sought by the class.  In his petition he is requesting relief from the application of the Marsy's

10 Law deferral periods and more frequent parole consideration hearings.  This is essentially the

11 same relief sought by the Gilman class.  In addition, his contention that he has opted out consists

12 solely of his argument that filing his habeas petition in this action was sufficient to "opt out."  He

13 fails to provide any indication that he requested permission from the Gilman court to opt out of

14 that action.

15         Members of a Rule 23(b)(2) class generally do not have the right to opt-out,

16 unless the district court, in its discretion, provides such ability.  See Ticor Title Ins. Co. V.

17 Brown, 511 U.S. 117, 121 (1994).  Here, no such option was specifically provided in the district

18 court's orders certifying the class (Doc. 182), nor in the order affirming that certification (9th cir.

19 Order). See Gilman v. Brown, 2013 WL 1904424, at *1, n. 1 (E.D.Cal. May 7, 2013) (citing E.D.

20 Cal. 05-cv–830, Docket No. 182.);  Gilman v. Schwarzenegger, 382 Fed.Appx. 544 (9th Cir.

21 2010) (E.D. Cal. 05-cv–830, Docket No. 257). Moreover, the district court expressly prohibit

22 class members from bringing individual lawsuits challenging Marsy's Law as violative of the

23 Federal Constitution's Ex Post Facto Clause.  (Doc. 296).  Regardless, without express

24 permission from the Gilman court, petitioner cannot simply "opt out" by simply filing his own

25 habeas petition.

26 / / /

1         At least one district court has held that a similarly situated petitioner "is not

2   entitled to habeas relief on his ex post facto challenge because he is a member of the class

3   already prosecuting this cause of action in [Gilman]. Petitioner cannot simultaneously prosecute

4   the instant claim here." Gonzales v. Dickinson, No. 2:10-cv-2277 MCE CKD P, Order dated

5   June 19, 2012, Doc. 25 at 2, citing Crawford v. Bell, 599 F.2d 890, 892 (9th Cir. 1979).  In light

6   of the ongoing Gilman action, the undersigned will recommend that petitioner's ex post facto

7   challenge to Marsy's Law be dismissed without prejudice.

8         **III.  CONCLUSION**

9         Based on the foregoing, the undersigned recommends that respondent's motion to

10  dismiss (Doc. 16) be granted.

11        These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

15  Findings and Recommendations."  Failure to file objections within the specified time may waive

16  the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17

18  DATED:  January 15, 2015

19

20                                **CRAIG M. KELLISON**
                              UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26